**Brian SCHNEIDER and Tom Cosgrove, Plaintiffs,**

v.

**INDIAN RIVER COMMUNITY COLLEGE FOUNDATION, INC., Herman Heise, Ira McAlpin, Jr., Standish L. Crews and Guy N. Cromwell, Defendants.**

**No. 84–8550–CIV.**

United States District Court, S.D. Florida, Fort Lauderdale Division.

April 30, 1987.

Frank A. Kreidler, Lake Worth, Fla., for plaintiffs.

Michael Jeffries, Fort Pierce, Fla., for defendants.

## FINAL SUMMARY JUDGMENT

ROETTGER, District Judge.

THIS CAUSE is before the court on motion of Defendants, INDIAN RIVER COMMUNITY COLLEGE FOUNDATION, INC., HERMAN HEISE, IRA McALPIN, JR., STANDISH L. CREWS and GUY N. CROMWELL, for an entry of summary judgment on their behalf. The court having considered the arguments of counsel,

the memoranda filed by the parties, and the record in this action, finds as follows:

## THE FIRST AMENDMENT AND RADIO

Plaintiffs, BRIAN SCHNEIDER and TOM COSGROVE, are former employees of Station WQCS, a non-commercial educational radio station licensed by the Federal Communications Commission to Indian River Community College in Fort Pierce, Florida. Plaintiffs' principal contention in the case before the court is that their First Amendment rights were violated because they were dismissed from their positions at WQCS due to their refusal to censor the news coverage provided by the college.

The president of Indian River Community College, Dr. Heise, met with Plaintiffs in March of 1982 and again in the fall of 1982 and told Plaintiffs not to include in the station's news reports stories about the development of nearby Hutchinson Island and about several local political elections. Dr. Heise allegedly informed Plaintiffs, BRIAN SCHNEIDER and TOM COSGROVE, that Indian River Community College had an interest in the issues and the college might, therefore, be accused of having bias if news coverage regarding the issues was provided by WQCS. Plaintiffs insist that President Heise's motive to censor the news regarding Hutchinson Island development was to secure additional funding for the college foundation from a developer of the island, the Homer Hoyt Institute.

Plaintiffs, in direct defiance of the directives of their employers, broadcast a number of news stories regarding development of Hutchinson Island and related events. In addition, Plaintiffs provided some coverage of the local political elections that concerned candidates associated with Indian River Community College. Plaintiff SCHNEIDER was dismissed from his position as Station Manager for WQCS on October 31, 1983 by President Heise with the knowledge and consent of Defendants McALPIN, CREWS, CROMWELL, and GRIFFEN, officers of the Indian River Community College Foundation, Inc.

Plaintiff COSGROVE was terminated nine months later, on July 31, 1984, by Defendant HEISE with the concurrence and consent of the above-mentioned officers of the Indian River Community College Foundation. Plaintiff COSGROVE had formerly served as the Program Director for Station WQCS. The position of Program Director was abolished by the administration at the time that Plaintiff COSGROVE was dismissed.

The letter of termination furnished to Plaintiff SCHNEIDER by Dr. Heise stated that Schneider's "performance has failed by a substantial margin to meet the standards expected of the station manager of WQCS" and that Schneider had "failed adequately to keep (his) supervisors informed about the management of Station WQCS and had created irreconcilable conflicts between (himself) and senior members of the administration of the College." The result, according to President Heise, was an impairment of the Trustees' ability to fulfill their responsibilities as licensees under the Communications Act.

As a result of their dismissals, Plaintiffs SCHNEIDER and COSGROVE initiated the instant case on October 31, 1984. Jurisdiction over this dispute by this court is present pursuant to 28 U.S.C. § 1331.

Plaintiffs' primary claim in the case before the court is that Defendants violated the First Amendment by attempting to censor the news stories broadcast by the community college radio station and by terminating Plaintiffs. For purposes of resolving the instant motion, the court shall assume that Plaintiffs were in actuality terminated because they broadcast stories regarding development of Hutchinson Island and local political campaigns contrary to the directions of the college president, Dr. Heise.

The court notes that a factual dispute does exist as to the reasons that Plaintiffs were dismissed from their positions with the radio station of Indian River Community College. The factual dispute is not, however, "material." The court has resolved "all reasonable doubts about the facts ... in favor of the non-movant."

*Thrasher v. State Farm Fire and Casualty Co.,* 734 F.2d 637, 639 (11th Cir.1984) (quoting *Casey Enterprises v. American Hardware Mut. Ins. Co.,* 655 F.2d 598, 602 (5th Cir.1981)). Even assuming that Plaintiffs were dismissed for the reasons that they allege, Defendants are "entitled to judgment as a matter of law." Rule 56(c) of the Federal Rules of Civil Procedure.

■ The fundamental question presented to this court is whether in making the programming decisions at issue and in terminating Plaintiffs for ignoring the programming directives, Defendants violated the First Amendment rights of the Plaintiffs, BRIAN SCHNEIDER and TOM COSGROVE.

"[I]n the twilight of its long and honorable existence" the United States Court of Appeals for the Fifth Circuit considered a similar issue *en banc. Muir v. Alabama Educ. Television Comm'n.,* 688 F.2d 1033, (5th Cir.1982) *(en banc)* The Fifth Circuit held in *Muir* that the licensee of a state-owned public television network had the right to make editorial decisions, including the right not to broadcast a particular program, and that such exercise of editorial discretion by a state licensee did not violate any First Amendment rights of viewers. *Id.* at 1043–47. The Fifth Circuit held, as well, that a non-commercial television station licensed to a state entity is not a public forum. *Muir* at 1041–43.

Plaintiffs attempt to distinguish *Muir* from the case before the court because the instant case concerns a suit by employees asserting their right to speak as opposed to an action by *viewers* against the television station because they wanted to see a particular program.[1] This is, however, a distinction without any meaningful difference. As was noted by the Fifth Circuit in *Muir,* First Amendment "protection applies both to the right to speak and the right to hear and is operative in a variety of contexts." *Id.* at 1037.

A more relevant distinction between the case at bar and the situation considered by

the Fifth Circuit Court of Appeals in *Muir* is that the instant case involves staff broadcasters who were terminated from their employment for broadcasting stories contrary to the directives of their superiors. As was noted by Judge Rubin in his concurring opinion in *Muir,* "those state employees who are charged with operation of the station, whether high or low in the managerial hierarchy, may have some right to free expression, which may be stronger if, for example, they function in an academic environment devoted to freedom of inquiry." Id. at 1049 (Rubin, J., concurring).

The court is mindful of this admonition. The court has, however, reviewed the statutory framework provided by Congress in the Communications Act of 1934. This framework demonstrates the longstanding policy of the Federal Communications Commission that the ultimate control of and responsibility for what is broadcast must remain with the licensee. *See, e.g., Columbia Broadcasting System, Inc. v. Democratic National Committee,* 412 U.S. 94, 93 S.Ct. 2080, 36 L.Ed.2d 772 (1973).

The licensee in the case before the court is the Board of Trustees of Indian River Community College. This court concludes that a decision in favor of Plaintiffs in the instant case would subject the Defendant licensees, who are ultimately and solely responsible for all programming content, to the whims and wishes of all subordinate, or in the instant case, insubordinate employees.

The Federal Communications Commission considered a case virtually identical to the case at bar in *Michael D. Bramble,* 58 F.C.C. 565 (1976). Mr. Bramble was a former news employee of a radio station who complained that he was terminated by him employer because news stories that he had broadcast were incompatible with the interests of local merchants who were also advertisers. Mr. Bramble contended that his constitutional rights were violated by his termination.

---

1. *See,* Plaintiffs' memorandum in opposition to the Defendants' motion for summary judgment, docket number 56.

The Federal Communications Commission rejected the notion that a former news employee has a right to broadcast material in defiance of the licensee's editorial judgment. The Commission initially noted that the action of the licensee, a commercial broadcaster, were not those of the government. 58 F.C.C.2d at 567–70. The Commission went on to state, however, that "the merits of petitioner's substantive First Amendment arguments are unpersuasive in light of *CBS v. DNC* . . ." 58 F.C.C.2d at 570–71.

The Commission also noted that adoption of Bramble's position would mean that a portion of the responsibility for what is broadcast over the facilities of a given station would devolve from the licensee to news reporters employed by the licensee. The Commission stated that "broadcasting licensees must assume responsibility for all material which is broadcast through their facilities. This includes all programs and advertising material which they present to the public . . . This duty is personal to the licensee and may not be delegated." *Michael D. Bramble*, 58 F.C.C.2d at 571 (quoting *En Banc Programming Inquiry*, 44 F.C.C. 2303, 2313–14 (1960)).

The Federal Communications Commission has iterated this position more recently. In *RKO General, Inc. (WHBQ–TV, Memphis)*, slip op. at 8, FCC 84–535 (November 23, 1984), the Commission reaffirmed that "the choice of what local news is to be covered by a station is a matter committed to the licensee's good faith discretion . . . a licensee is under no obligation to cover each and every newsworthy event which occurs within a station's service area." *See also, Revision of Programming Policies*, 98 F.C.C.2d at 1092.

This court finds, therefore, that Plaintiffs' asserted First Amendment right to broadcast does not exist. Rather, the right to determine, and the concurrent responsibility for deciding, what is to be broadcast from the Indian River Community College radio station resides solely in the Board of Trustees of Indian River Community College, the Defendant licensees in the case before the court.

Plaintiffs in the instant case concede that in a private context, CBS could fire Dan Rather if he did not cover the evening news in the manner in which CBS wanted it covered. *See*, Plaintiffs' memorandum in opposition to Defendants' motion for summary judgment, docket number 56. Plaintiffs contend, however, that the situation at issue in the case at bar is different because this case does not involve the private sector of broadcasting. Rather, this suit concerns a governmental educational institution.

As was noted by the Fifth Circuit Court of Appeals in *Muir*, however, "the FCC, in its demand for unfettered licensee control over programming has made no distinction between private and public licensees." 688 F.2d at 1040 (citing *City of New York Municipal Broadcasting System*, 56 F.C.C.2d 169 (1975)). The Fifth Circuit emphasized that "under the existing statutes public licensees such as AETC and the University of Houston possess the same rights and obligations to make free programming decisions as their private counterparts . . ." 688 F.2d at 1041. The public v. private distinction advocated by Plaintiffs, BRIAN SCHNEIDER and TOM COSGROVE, therefore necessarily fails.

The public context of this action is simply not determinative of the issues presented and the court finds that pursuant to existing precedent, Defendants are entitled to judgment on their behalf as a matter of law.

Plaintiffs emphasize that Dr. Heise's motive for excluding programs relating to development of Hutchinson Island was to secure additional funding for the college. As was noted by the Fifth Circuit in *Muir*, however, Plaintiffs have access to an alternate forum for resolution of their grievances. *Muir* at 1024–26. The "FCC routinely reviews claims of the type pressed upon us, namely that programming judgments had been made improperly, deceptively, or in bad faith." *Id.* at 1025. Indeed, the FCC has previously considered the issues before this court and has deter-

mined that the licensees acted within their discretion.

## THE FIRST AMENDMENT AND THE MEETING

■ Plaintiffs, BRIAN SCHNEIDER and TOM COSGROVE, also contend that their First Amendment rights were violated because they were not permitted to speak at a District Board of Trustees meeting of Indian River Community College that was held on October 25, 1983. Defendant IRA McALPIN, JR. presided at the meeting in question. Mr. McAlpin states in his affidavit in support of summary judgment that due to the large number of people who attended the meeting, he decided not to "allow members of the staff of WQCS or its Advisory Board to speak ...as ...those individuals would have other channels of input if they wished certain facts to be known to the Board of Trustees of Indian River Community College and it would be impractical from a time standpoint to allow that number of people to speak." *See,* Affidavit of Ira McAlpin, Jr., docket number 59.

Plaintiffs, BRIAN SCHNEIDER and TOM COSGROVE, totally fail to explain how they were prevented from speaking at the subject trustees' meeting or how their rights were violated when they attended the meeting.

Defendants presume that Plaintiffs are attempting to analogize to certain cases which held that public employees cannot be discharged or otherwise penalized for exercising their First Amendment right to speak on public issues. *See, Pickering v. Board of Education of Township High School District 26, Will County, Illinois,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Berdin v. Duggan,* 701 F.2d 909 (11th Cir.1983); plaintiff's response to defendants' motion to dismiss.

As Defendants, explain, however, the fatal flaw in Plaintiffs' argument is that Plaintiffs did not speak at the October 25, 1983 meeting of the District Board of Trustees. Plaintiffs could not, therefore, have been penalized for their speech.

In addition, the court finds that the Plaintiffs' claim regarding the Trustees' meeting is essentially surplus. Plaintiffs merely allege a totally unsupported conclusion. The court, having decided that Plaintiffs' principal contention is without merit, shall in its discretion disregard the summary allegations of Plaintiffs concerning the Trustees' meeting.

Defendants adequately refute Plaintiffs' claims regarding Plaintiffs' inability to speak at the Trustees' meeting in their affidavits referred to by the court previously. Defendant, HERMAN A. HEISE, states in his affidavit that "the presence of BRIAN SCHNEIDER at the ...trustees meeting was not a factor in the decision to terminate BRIAN SCHNEIDER." *See,* docket number 59. Defendant, HERMAN A. HEISE, also states in his affidavit that "the presence of TOM COSGROVE at the ...trustees meeting was not a factor in the decision to terminate TOM COSGROVE." *See,* docket number 59. Defendant, IRA McALPIN, JR., states in his affidavit filed with the court in support of summary judgment that "to the best of affiant's knowledge and belief, the presence of either BRIAN SCHNEIDER or TOM COSGROVE at the ...meeting was not a factor in their dismissal or in their failure to be rehired." *See,* docket number 59.

Defendants having supported their motion for summary judgment regarding this issue as provided in Rule 56(e) of the Federal Rules of Civil Procedure, Plaintiffs "may not rest upon the mere allegations or denials of (their) pleading, but (their) response, by affidavits ...must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e) of the Federal Rules of Civil Procedure; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Plaintiffs having failed to so respond to the affidavits filed by Defendants, the court finds that there is no factual issue to be determined at trial.

Finally, Plaintiffs contend that Defendants violated the Florida Sunshine Law by their conduct at the Trustees' meeting at issue. The pendent state law claims of

Plaintiffs, however, must be dismissed for lack of subject matter jurisdiction. As was noted by the Supreme Court in *United Mine Workers of America v. Gibbs*, "certainly, if federal claims are dismissed before trial, even though not insubstantial in the jurisdicational sense, the state law claims should be dismissed as well." 383 U.S. 715, 726, 86 S.Ct. 1103, 1139, 16 L.Ed. 2d 218 (1966). Accordingly, the pendent state law claims of Plaintiffs in the instant action are hereby DISMISSED.

### FREEDOM OF THE PRESS

■ Plaintiffs, BRIAN SCHNEIDER and TOM COSGROVE, also allege that Dr. Heise threatened to terminate those employees who spoke to the press. Plaintiff, TOM COSGROVE, however, states in his deposition that he only assumed that he would be terminated for speaking to the press; he could recall no specific threat. Plaintiff COSGROVE states, "my natural assumption was that any time further down the road if a press member asked us to speak concerning an issue at WQCS, that we were in jeopardy." *See*, deposition of Tom Cosgrove at 34–35. Plaintiff COSGROVE concluded this because after a story was printed which Plaintiffs contributed to Dr. Heise called a meeting and expressed his disapproval.

The freedom of the press claim of Plaintiffs is, therefore, based merely upon an unfounded assumption of Plaintiffs. This assumption of Plaintiffs is, by their own deposition testimony, without any supporting factual basis. The court finds that the speculations of Plaintiffs cannot defeat the well-founded summary judgment motion of Defendants.

In addition, the press printed the story at issue quite some time before Plaintiff COSGROVE was discharged from his position at WQCS. The court finds, therefore, that Plaintiff COSGROVE's contact with the press was not a factor in the dismissal of Plaintiff COSGROVE. Plaintiff SCHNEIDER was fired approximately one month after the article at issue was printed. Plaintiff SCHNEIDER did not, however, speak to the press and it would, therefore, seem that the press contact is irrelevant to the claims of Plaintiff SCHNEIDER. The court finds that there are insufficient allegations of retaliatory dismissal in this action and that the claims regarding freedom of the press are, in addition, mere surplusage.

### RIGHT OF ASSOCIATION

■ The novel right of association claim indicates, perhaps more clearly than Plaintiffs' other constitutional contentions, the manner in which Plaintiffs have pleaded and pursued the action at issue. Plaintiffs, BRIAN SCHNEIDER and TOM COSGROVE, have appended a covey of meritless constitution claims to their principal First Amendment claim.

Plaintiffs allege that their constitution right of association was violated by Defendants because they were prohibited from attending a meeting of the station's Community Advisory Board in August of 1983. Plaintiff COSGROVE also contends that he was questioned several times by his supervisors about whether he was still associating with Plaintiff SCHNEIDER subsequent to the dismissal of Plaintiff SCHNEIDER. Even assuming that the facts alleged by Plaintiffs are true, however, these contentions cannot support a claim based upon the constitutional right of association.

As is noted by Defendants in their memorandum in support of summary judgment, there are four ways in which government can abridge the implied First Amendment right of association. The government can abridge this right by directly punishing the fact of membership in a group, by intruding upon the internal organization of a group, by withholding a privilege or benefit from the members of a group, or by compelling disclosure of a group's membership or of an individual's associational affiliations. *See, e.g.,* Tribe, *American Constitutional Law* (1978) at 703.

Plaintiffs do not even allege any actions by Defendants which would place Plaintiffs within any of these categories. Accordingly, the court finds that Defendants are entitled to judgment as a matter of law as

to Plaintiffs' novel right of association claims. The court notes that Plaintiffs cite absolutely no authority in support of their contention that Defendants violated their right of association, other than cases which hold that the right of association has been interpreted to include association between two people. These cases are simply not sufficient to support Plaintiffs' contentions regarding their right of association.

## DUE PROCESS

 Plaintiffs also allege that they held positions at Indian River Community College which entitled them to due process prior to their terminations. Plaintiffs state in their affidavits that they had a reasonable expectation of continuing employment due to a Career Service brochure and that they would have vested rights in a pension after ten years employment with Indian River Community College. *See*, Affidavits, docket number 55.

Plaintiffs, however, had no written employment contracts and Plaintiff SCHNEIDER conceded that no promises were made to him that he could be employed for as long as he liked. *See*, depositions of Plaintiffs, page 6, 11 and 29.

As was noted by the Supreme Court in *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), a public employee may be discharged without a hearing where neither state statute nor his individual contract provide him with an enforceable expectation of continued employment. This is the situation before the court.

Finally, Plaintiffs contend that they should have been given written employment contracts due to the teaching responsibilities they discuss in their affidavits. Plaintiffs assert that Florida Administrative Rule 6A–14.41 mandates that they be provided with written contracts. That Administrative Rule, however, expressly excludes "para-professional personnel including television station managers, television cameramen, teacher aides and administrative positions ..." Florida Administrative Rule 6A–14.41.

## CONCLUSION

In summary, the court concludes that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ...show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c) of the Federal Rules of Civil Procedure. The court notes that Plaintiffs, BRIAN SCHNEIDER and TOM COSGROVE, have listed no facts at issue in opposition to Defendants' motion for summary judgment. Rather, Plaintiffs present only insubstantial and unsupported legal conclusions.

Accordingly, it is

ORDERED AND ADJUDGED that Defendants' motion for summary judgment is hereby GRANTED as to all federal claims.

FURTHER ORDERED that all pendent state law claims are hereby DISMISSED without prejudice.