Thomas BERDIN, et al., Plaintiffs-Appellees, Cross-Appellants,

v.

John DUGGAN, et al., Defendants-Appellants, Cross-Appellees.

No. 81–5259.

United States Court of Appeals, Eleventh Circuit.

April 1, 1983.

Bertram A. Sapurstein, Miami, Fla., for Duggan.

Joseph F. Tomassi, Homestead, Fla., for City of Florida City.

Joel V. Lumer, Miami, Fla., for plaintiffs-appellees, cross-appellants.

Before HILL and CLARK, Circuit Judges, and SCOTT *, District Judge.

CLARK, Circuit Judge:

Thomas Berdin was employed by the city of Florida City as a worker on its maintenance crew for many years.[1] Berdin's job consisted of maintaining certain areas of the city by mowing grass, cleaning streets, picking up trash, and trimming hedges and trees. In December 1973, the crew was also assigned to maintain the baseball field and the city hired no new employees.

Appellant John Duggan was the mayor of Florida City at the time in issue. On April 11, 1974, Mayor Duggan visited the baseball field and approached the three-man maintenance crew, saying, "How you boys doing?" Berdin replied that they could do much better if they had a couple of more workers. Mayor Duggan responded, "What, is it too much for you?" Berdin replied that the crew was doing all it could but that they could make a better showing if they had more workers.

At this point, Mayor Duggan walked away. He stood aside for a moment, returned to where Berdin was working, and stated, "You don't run my job. I am going to show you who the boss is. You is fired."[2] Berdin subsequently collected his final check from the city clerk.

---

* Honorable Charles R. Scott, U.S. District Judge for the Middle District of Florida, sitting by designation.

1. The facts in this case were vigorously contested. The district judge's findings were given orally in open court. Our statement of the facts is taken both from the judge's findings of fact and a careful review of the record.

2. Mayor Duggan testified that he told Berdin if the work was too much for him, then he could

Berdin filed a complaint under 42 U.S.C. sec. 1983 against Mayor Duggan and Florida City alleging, among other things, that the plaintiff had been discharged for exercising his first amendment right to speak.[3] Following a bench trial, judgment was entered in favor of Duggan and Florida City on the grounds that Berdin's speech was not protected speech since his speech did not involve a matter of public concern. Berdin then filed a motion to alter or amend the judgment or for rehearing, stating that the issue of protected speech was not specifically covered or emphasized at trial and requesting an opportunity to prove that plaintiff's speech was, in fact, protected. Agreeing that the basis of its decision had not been focused upon at trial, the district court granted the motion to take further testimony on the issue.[4]

According to the testimony of Berdin and several homeowners, the streets, trees, lawns, and public facilities fell into general disrepair after 1973 and continued in such a state through 1974. The record indicates that Berdin received complaints from citizens regarding the poor conditions of the streets and lawns, citizens appeared at City Hall to voice complaints, and Berdin complained to Commissioner Thompson and requested more men for the maintenance crew. Mayor Duggan testified that the streets and lawns were in good condition, there was ample manpower on the maintenance crew, and that he received no complaints about the condition of the streets and lawns.

Finding Berdin's speech to be a matter of public concern, the district court concluded that the speech was constitutionally protected and entered a final judgment in favor of Berdin and against both defendants. This judgment included damages for back pay less money earned elsewhere, costs, and attorney's fees. Minimum punitive damages were also awarded against defendant Duggan. Both defendants filed motions for new trial, which were denied. The present appeal followed, with the plaintiff filing a notice of cross-appeal on the issue of the award of punitive damages and attorney's fees. We conclude that the judgment of the district court should be affirmed.

*Protected Speech*

■ In order for Berdin to succeed on the merits, he must demonstrate that his remarks at the baseball field were a motivating factor in the decision to terminate[5] and that those remarks were constitutionally protected.[6] Once the employee has shouldered this burden, the burden of proof shifts to the government to show by a preponderance of the evidence that it would have reached the same decision to discipline

---

go home, and that Berdin voluntarily quit his job at that point. In his answer to Berdin's second amended complaint, however, Duggan asserted that Berdin was "discharged from his employment because of his poor job performance, lack of aptitude, and lack of skills." The district court found that Berdin was discharged by Mayor Duggan. (Record, Vol. 6, p. 5).

3. Berdin went to trial on his second amended complaint. In that complaint, he sued in four counts pursuant to 42 U.S.C. sections 1981 and 1983, the First and Fourteenth Amendments to the United States Constitution, and the Laws of the State of Florida. For the purposes of this appeal, only the claim mentioned in the text is in issue.

4. Mayor Duggan filed a motion to allow further testimony on the issue of whether plaintiff was fired by Duggan. The district court denied that motion on the grounds that the defendants had not been surprised by the development of that issue. Rather, the district court noted that it

had been the defendants' position all along that Berdin was not fired. (Record, Vol. 6, p. 4).

5. There is no dispute between the parties regarding the reason for Berdin's discharge. The parties agree that Berdin's employment with the city ceased as a result of his interchange with Mayor Duggan at the baseball field. Moreover, the causation issue is a question of fact, and thus we are bound by the clearly erroneous rule when reviewing the district court's finding that the speech "was a substantial factor in this man's being fired." (Record, Vol. 6, pp. 5, 6). *See Van Ooteghem v. Gray,* 654 F.2d 304, 305 (5th Cir.1981) (en banc), *cert. denied,* 455 U.S. 909, 102 S.Ct. 1255, 71 L.Ed.2d 447 (1982).

6. Whether an employee's speech is constitutionally protected is a question of law, and thus we are not bound by the district court's finding on this issue. *Bickel v. Burkhart,* 632 F.2d 1251, 1256 (5th Cir.1980).

the employee in the absence of the protected speech.[7] *Mount Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Paschal v. Florida Public Employees Relations Commission,* 666 F.2d 1381 (11th Cir.), *cert. denied,* 457 U.S. 1109, 102 S.Ct. 2911, 73 L.Ed.2d 1319 (1982). Because of the peculiar facts of this case, the only inquiry we need address with regard to Berdin's basic first amendment claim is whether his speech was constitutionally protected.

■ Whether a public employee's speech is constitutionally protected is determined by a balancing of the employee's interest in free speech and the state's interest in promoting the efficiency of the public services performed through its employees. *Pickering v. Board of Education of Township High School District 205, Will County, Illinois,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). This balancing test applies equally to private and public expressions by a public employee. *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979).

■ Prior to *Givhan,* the cases involving a public employee's right of free speech dealt with public expressions by the employee. In *Givhan,* a school teacher was dismissed after privately complaining to the principal about certain policies and practices of the school which she perceived to be racially discriminatory. Striking the *Pickering* balance in favor of the employee, the Supreme Court held that the teacher's criticisms of school policy were protected notwithstanding the private nature of the communication. Thus, the fact that Berdin's expression was directed to Duggan privately[8] does not render his speech outside the purview of the first amendment.

■ Applying the *Pickering* test involves considerations such as whether the speech was directed toward a person with whom the employee would normally be in contact in the course of his daily work, whether the statements tended to interfere with internal discipline or harmony among co-workers, and whether the speech concerned a matter of public concern. Where private expression is at issue, the Supreme Court has indicated that the time, place, and manner of the speech are to be weighed in the *Pickering* calculus.[9] *Givhan,* 439 U.S. at 415 n. 4, 99 S.Ct. at 696, 58 L.Ed.2d at 624.

■ In the instant case, Berdin and Duggan did not normally come in contact during the course of their daily work. No close working relationship existed between this maintenance crewman and the town mayor, and both parties testified that no anger or hostility existed between the two. Further, there was no evidence that Berdin's speech resulted in an internal discipline problem or disharmony among co-workers. Rather, Berdin's onlooking fellow workers continued work as usual.[10] Finally, the district court found, based on the testimony and credibility of the witnesses, that Berdin's speech was a matter of public concern. While the specific words may not seem important to the public at large, after independent evaluation of the record, we do not find the district court's ruling that the evidence supported a finding of public concern

---

7. The district court noted that the *Mount Healthy* inquiry of whether the defendants have demonstrated that the plaintiff would have been fired even in the absence of the constitutionally protected conduct is not a viable consideration in the context of this case since the defendants have taken the position that Berdin was not fired. (Record, Vol. 6, p. 6).

8. Although the evidence shows that at least one co-worker heard the exchange between Berdin and Duggan, the speech was ostensibly a private expression rather than a public one since it was directed toward Duggan personally

and took place at a time when the chance of being overheard by the public was minimal.

9. This is in addition to the *content* of the speech, the main focus in a public expression. *Givhan,* 439 U.S. at 415 n. 4, 99 S.Ct. at 696, 58 L.Ed.2d at 624.

10. Duggan stated in his deposition that no disruption of work occurred. (Deposition of John Duggan at 21). The district court stated, "This simply is not one of those cases of public employee bickering, continued unrest." (Record, Vol. 6, p. 5).

to be clearly erroneous.[11] Consequently, Berdin's criticism of Florida City's maintenance practices is not unlike Givhan's criticism of Western Line's school policy. Both speakers felt strongly enough about the subject matter to personally confront their employer. Thus, we find that under the circumstances of this case the city's interest in efficiency of services does not outweigh the interest of the public employee in free speech and that the speech is constitutionally protected.

### Duggan's Qualified Immunity

■ Mayor Duggan asserts that his action of firing Berdin[12] is protected by a qualified immunity.[13] Certainly, a qualified immunity does exist for certain executive officers for discretionary acts performed in the course of official conduct. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). However, the defense of qualified immunity is unavailable to government officials who, though otherwise covered, act in such a manner as to be violative of clearly established statutory or constitutional law. *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

■ The disciplining of a public employee, for exercising his first amendment right to speak, clearly contravenes established law. *See Perry v. Sinderman,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Keyishian v.*

*Board of Regents,* 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967). In *Harlow,* the Supreme Court stated that where

> the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct.[14] ... Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action.

*Harlow* 102 S.Ct. at 2739 (footnote supplied). Accordingly, we find that Duggan should have known in 1974 that his action of firing Berdin was an impermissible exercise of his discretionary power,[15] violative of this employee's first amendment rights.

### Florida City's Immunity

■ In *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that a municipality is liable in a section 1983 action only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." 436 U.S. at 694, 98 S.Ct. at 2037. The municipality may not assert the good faith of its agents as a defense to the liability. *Owen v. City of Independence, Missouri,* 445 U.S. 622, 100 S.Ct. 1398, 68

11. *See also Waters v. Chaffin,* 684 F.2d 833 (11th Cir.1982) ("[T]he first amendment's protections do not turn on the social worth of the statements, saving a few exceptions ...."). *Id.* at 837; *Hanson v. Hoffman,* 628 F.2d 42 (D.C.Cir.1980); *Yoggerst v. Stewart,* 623 F.2d 35 (7th Cir.1980).

12. This is an alternative argument since Duggan continues to maintain that Berdin quit his job.

13. Qualified immunity is an affirmative defense and thus must be asserted by the defendant. *Williams v. Treen,* 671 F.2d 892, 896 (5th Cir. 1982). Here, Duggan injected this issue into the lawsuit by making it the basis for his motion for summary judgment and accompanying memorandum of law.

14. Here, Duggan merely propounds the conclusory argument that he acted in good faith. He does not argue "[unawareness] of a constitutional right that had not yet been declared." *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1979). Moreover, this court has recently stated that "[a] bald assertion that the acts were taken pursuant to the performance of duties and within the scope of duties will not suffice." *Espanola Way Corporation v. Murray Meyerson,* 690 F.2d 827 (11th Cir.1982).

15. Duggan stated in his deposition that no limitations were placed on his discretion in the hiring and firing of city employees. (Deposition of John Duggan at 17).

L.Ed.2d 673 (1980). Thus, the inquiry becomes one of whether Florida City had any policy, ordinance, or regulation that could fairly be said to represent official policy granting the mayor the authority to fire public employees.

Florida City maintains that the existence of any such policy is "unknown to the appellant, City." Brief of City of Florida at 19. Florida City Ordinance 73–1, however, grants the mayor authority over city employees with the power to hire and fire. The ordinance imposes no limit on the mayor's discretion. Established by the City Council, Ordinance 73–1 was later ratified by the town residents in an election as Resolution 73–2.[16]

Florida City also argues that Duggan was not the final authority of administrative decisions but, rather, was answerable to the City Commission. The question of whether the city delegated to the mayor the final authority to make personnel decisions is a question of fact for the trial judge in the first instance. *Hearn v. City of Gainesville,* 688 F.2d 1328, 1334–35 (11th Cir.1982); *Schneider v. City of Atlanta,* 628 F.2d 915, 920 (5th Cir.1980). We note the district court's finding that "the mayor was clothed with the authority to actually make the firing decision. Not only is this clear from the evidence of the authority that had

been granted him under the type of government that the city operated, but because the evidence otherwise shows that all it took was the mayor to say, 'Get your stuff and go, you are fired,' that is what happened and the city closed him out." (Record, Vol. 6, p. 9).

A district court finding, explicit or deemed, is measured under Rule 52(a) and rejected only "when although there is evidence to support it, [we are] left with the definite and firm conviction that a mistake has been committed." *Hearn v. City of Gainesville,* 688 F.2d at 1335 (citations omitted). We agree with the district court that Duggan's actions constituted the official policy of Florida City within the meaning of *Monell.*[17]

*Other Issues*

After a review of the record, the findings and conclusions of the district court, and the briefs of the parties, we find the other issues raised by defendants devoid of merit.[18] Likewise, we reject plaintiff's contentions on cross-appeal.[19] The judgments of the district court are AFFIRMED.

---

**16.** This ordinance eliminated the city-manager type of government existing in Florida City prior to 1974. *See, e.g.,* Deposition of John Duggan, pp. 4–6.

**17.** In *Monell,* the Supreme Court stated:
[A]lthough the touchstone of the section 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other section 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.
*Monell,* 436 U.S. at 690–91, 98 S.Ct. at 2036.
We would also note the absence of any evidence by Florida City regarding the City Commission's power to overrule the personnel decisions of the mayor. *See Bowen v. Watkins,* 669 F.2d 979, 989–90 (5th Cir.1982) ("If a high official has the power to overrule a decision but

as a practical matter never does so, the decision-maker may represent the effective final authority on the question. Finally, even if there is an appeal of an action but the appellate body defers in substantial part to the judgment of the original decision-maker, the original decision may be viewed as the government's policy.").

**18.** Duggan argued on appeal that, contrary to the district court's specific finding, Berdin quit his job. Florida City argued that the trial court improvidently granted Berdin's motion to allow further testimony, erred in its failure to grant the city's motion to dismiss, erred in not treating the city's motion to dismiss as a motion for summary judgment and not granting the latter, and erred in allowing testimony regarding Berdin's attorney's fees after Berdin had rested his case.

**19.** Berdin argued that the award of punitive damages and attorney's fees was inadequate.