Robert MUSTIN, Plaintiff,

v.

Donald R. HAYES, etc., et al., Defendants.

Herbert E. MANN, Plaintiff,

v.

Donald R. HAYES, etc., et al., Defendants.

Civ. A. Nos. 82–694–N, 82–737–N.

United States District Court, M.D. Alabama, N.D.

May 21, 1984.

Eric A. Bowen and Kenneth T. Hemphill, Montgomery, Ala., for plaintiffs.

Robert C. Black, Hill, Hill, Carter, Franco, Cole & Black and H. Al Scott, Montgomery, Ala., for defendants.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

The issue before the court is whether two employees of the City of Montgomery, Alabama were punished and harassed in violation of their constitutionally protected right to freedom of expression. Based

upon the evidence presented at a nonjury trial, the court finds that they were, and that they are thus entitled to appropriate relief.

## I.

In December 1979, plaintiffs Robert Mustin and Herbert E. Mann began work as automotive mechanics in the Garage and Shop Department of the City of Montgomery, Alabama. Defendant Donald R. Hayes was director of the department, defendant William H. Jones was assistant director, and defendant Robert F. Wade was garage foreman. Mustin and Mann immediately began to notice suspicious activity by their supervisors.

Mustin observed the following. Wade asked Mustin to obtain parts from city supplies. Wade did not have appropriate requisition forms. Mustin believes he later saw these parts on Wade's private motorcycle. Jones, who also owned a motorcycle, asked Mustin to obtain a tool kit for him. After he delivered the tool kit to Jones, Mustin never saw it again. The kit was not obtained through proper requisition procedures.

Mann had similar experiences. For example, Wade asked him to obtain a headlight and a headlight switch from city supplies. Wade did not have appropriate requisition forms. When Mann went to get the parts, he had the parts employee "circle the matter" because he was concerned that what he was doing might be improper. Mann believes he later saw the parts on Wade's motorcycle.

Mustin and Mann later listened to a department tape requiring that employees report pilferage. They became concerned about what they had earlier observed and reported it to Hayes and one or more police officers. Hayes failed to conduct an investigation. The police officers referred them to T.J. McClain of the Internal Affairs section of the Montgomery Police Department. After they told McClain everything they had observed, McClain agreed to investigate the matter. McClain reported what he had learned to the Deputy Chief of the Montgomery Police Department, who turned the matter over to defendant John J. Hogg, Jr., Executive Assistant to the Mayor. No investigation was conducted, however. McClain testified, and the court finds, that he met with "city officials" and they would not authorize him to investigate the matter. McClain further testified that he was upset with the city's response.

Hogg informed Hayes of what he had learned. Hayes immediately requested that Mustin and Mann meet with him and Jones. At the meeting, Hayes and Jones said they had heard that two employees were complaining about pilfering in the department, and were afraid to come forward. Mustin and Mann confirmed that they had observed suspicious conduct but were afraid to come forward. Five days later, Mustin and Mann were charged by Hayes with making "malicious allegations" against Wade in the presence of other employees. Hayes further charged that these allegations had a "demoralizing effect," "leaving doubts in the minds of Garage and other personnel as to the honesty and integrity of Mr. Wade."

A hearing was held before Hogg. Hayes, Jones and Wade, along with Mustin and Mann, testified. After the hearing, Hogg recommended to the mayor that Mustin and Mann be suspended for 10 days without pay for their conduct. The mayor accepted the recommendation and the two were accordingly suspended. As a result of the suspensions, they each lost $465.60 in pay.

When Mustin and Mann returned to work after their suspensions, their department adopted the informal policy that its employees were to avoid them.

Hayes also transferred Mann to the night shift, working on heavy equipment. Mann had no training with heavy equipment. He stayed with the night shift until Hogg transferred him back to his previous work.

Hayes discharged Mustin for disobeying an order requiring him to obtain a doctor's excuse when he returned to work after a

sick leave. While most employees in the department were not required to have a doctor's excuse before returning to work after sick leave, many were. Mustin appealed his discharge to the personnel board, and the board reinstated him with a 90–day suspension without pay. When Mustin returned after this suspension, his position was no longer available. Hayes transferred Mustin to the heavy equipment division, even though Hayes, in his own words, "question[ed] his ability to accomplish the required task." Mustin eventually resigned because he could not do the heavy equipment work, and because he found a better paying job.

## II.

Plaintiffs Mustin and Mann have filed these consolidated lawsuits under 42 U.S.C.A. § 1983 against defendants Hayes, Jones, Wade and Hogg, in their individual and official capacities. This court's jurisdiction has been properly invoked pursuant to 28 U.S.C.A. § 1343. Mustin and Mann claim that their rights under the first and fourteenth amendments to the United States Constitution have been violated by the defendants.

■ It is now elemental that a public employee does not relinquish the first amendment right to freedom of expression by virtue of government employment. *Connick v. Myers*, 461 U.S. 138, 140, 103 S.Ct. 1684, 1686, 75 L.Ed.2d 708 (1983). On the other hand, the government has a "legitimate purpose in 'promot[ing] efficiency and integrity in the discharge of official duties, and to maintain proper discipline in the public service.'" 461 U.S. at 150–51, 103 S.Ct. at 1692 (*quoting Ex parte Curtis*, 106 U.S. 371, 373, 1 S.Ct. 381, 384, 27 L.Ed. 232 (1882)). In resolving the claims presented by Mustin and Mann, this court must consider and weigh these competing interests.

■ In *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1976), the Supreme Court established the test by which a court determines whether a government employer has infringed on an employee's constitutionally protected right to freedom of expression. An employee who has suffered an adverse employment decision has the twin burden of establishing by a preponderance of the evidence that his or her speech was constitutionally protected and was a substantial or motivating factor in the adverse decision. If the employee meets this burden, the burden of proof shifts to the employer to show by a preponderance of evidence that it would have reached the same decision even in the absence of the protected speech. 429 U.S. at 287, 97 S.Ct. at 576. *Berdin v. Duggan*, 701 F.2d 909 (11th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 239, 78 L.Ed.2d 230 (1983).

■ In assessing whether the employee's speech is constitutionally protected, the court must "arrive at a balance between the interest of the [employee], as a citizen, in commenting on matters of public concern and the interest of the [city], as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968). In striking this balance, the court should consider such interdependent factors as the nature of the speech, the need, if any, of the employer to restrict the speech, the nature and contours of the relationship between the employee and the employer, and the context in which the right to speak is exercised. *See Connick*, 461 U.S. at 150, 103 S.Ct. at 1691–92 ("state's burden in justifying a particular discharge varies depending upon the nature of the employee's expression"); *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) (student's exercise of first amendment right limited by school environment); *Pickering, supra* (employment relationship affects contours of exercise of free speech); *Waters v. Chaffin*, 684 F.2d 833 (11th Cir.1982) (government's interest in restricting police officer's speech varies depending on whether the officer is on or off duty); *Garcia v. United States*, 666 F.2d 960, 964 (5th Cir.

1982) (Unit B) (witness-protection-program participant's exercise of first amendment right limited by nature and purpose of program).

■ Mustin and Mann have established, first, that their speech was a motivating factor behind some of the adverse actions taken against them; and, second, that their speech was constitutionally protected. The defendants have not established that they would have taken the adverse actions in the absence of the protected speech.

### A.

Mustin and Mann's complaints to the Montgomery police about suspected pilfering were the motivating factor behind their 10–day suspensions. Hayes did not initiate disciplinary proceedings against them until after he learned from Hogg that they had complained to the police. Hayes, Jones, Wade and Hogg, working together, then effected Mustin and Mann's suspensions. Also following the suspensions, Hayes, Jones and Wade, working together, engaged in a program of harassment, including having their employees ostracize Mustin and Mann, and having Mustin and Mann transferred to the heavy equipment division.

Mustin's 90–day suspension without pay was not, however, a result of his exercise of protected speech. Mustin was guilty of insubordination because he failed to produce a doctor's excuse, though directed to do so. His suspension by the personnel board was an appropriate response.

### B.

Mustin and Mann's complaints to the police were constitutionally protected speech. The complaints involved "matters of public concern," thereby directly implicating first amendment concerns. *See Connick, supra.* The Garage and Shop Department had an official policy requiring that employees report pilferage. Complying with this policy, Mustin and Mann privately and prudently reported what they had observed to the Police Department, with the expectation that it would conduct an investigation. They did not knowingly and recklessly make false statements or allegations. *See Pickering,* 391 U.S. at 584, 88 S.Ct. at 1743.

### C.

In response, the defendants contend that Mustin and Mann engaged in conduct which was constitutionally unprotected, and that Mustin and Mann would have been suspended for this conduct in the absence of the protected speech. Specifically, the defendants maintain that Mustin and Mann made "malicious allegations" against Wade in the presence of other employees, and that their conduct had a demoralizing and disruptive effect on the Garage and Shop Department. If Mustin and Mann engaged in such conduct, the court agrees that the conduct would not be constitutionally protected; for, the thrust of such conduct would be to disrupt the department, undermine Wade's authority, and destroy the close relationship between Wade and his employees. *See, e.g., Connick.* Such conduct would touch "upon matters of public concern in only a most limited sense." 461 U.S. at 154, 103 S.Ct. at 1693.

Mustin and Mann, however, did not engage in disruptive and libelous conduct. They discreetly told the police what they had observed, with the expectation that the police would follow through with an investigation. The evidence reflects that their private statements to the police did not impede their ability to perform their jobs, undermine their relationship with their superiors, or otherwise impair the effectiveness and efficiency of the Garage and Shop Department to deliver services.

If there were any improper floating rumors and disruption in the department, they were not the basis for the 10-day suspensions. When Hayes learned that Mustin and Mann had complained to the police, he immediately initiated disciplinary proceedings against them. It was their complaints to the police that caused their suspensions. Mustin and Mann would not have been suspended in the absence of their complaints to the police. Moreover, if

the events leading up to and following their complaints to the police could be characterized as disruptive, the disruption was due more to actions of the defendants than Mustin and Mann.[1]

Furthermore, Hogg maintained before this court that in deciding whether to suspend Mustin and Mann he was faced for the most part with the choice of believing either Mustin and Mann or Wade.[2] It is apparent from his testimony that the suspensions were based not on any claimed disruption in the Garage and Shop Department, but principally on his conclusion that Mann and Mustin had made allegations that could not, upon limited investigation, be substantiated.

█ Moreover, it is apparent from Hogg's testimony that the city has an official policy that if an employee's report of improper or illegal conduct fails to prove true, the employee is subject to discipline. This policy is constitutionally impermissible, for it requires that government employees place their jobs on the line before they may exercise their constitutionally protected right to freedom of expression.

In *Swaaley v. United States*, 180 Ct.Cl. 1, 376 F.2d 857 (1967), the plaintiff was discharged from his employment at a New York Naval Shipyard after he sent a letter to the Secretary of the Navy charging corruption in the promotions. What the court said there is apposite here:

An employee writing a letter such as we have here might be presumed to desire that the Department would cause his charges to be investigated. He would almost never be able to prove anything himself; that is hard enough for trained investigators using sophisticated techniques, and yet solely by rumor and hearsay he may have a pretty good idea where the bodies are buried. Hence, to say an employee reporting what he believes is going on is guilty of misconduct if he cannot prove it, is tantamount to saying he is not to transmit anything at all. Any regulation which would compel the critic of official conduct to guarantee the truth of all his factual assertions—and to do so on pain of dismissal from his job—leads to "self-censorship," ... a result which cannot be tolerated in this area.

376 F.2d at 861–62 (citation omitted).

### III.

Mustin and Mann seek compensatory and punitive damages and attorney fees.

█ Since their 10-day suspensions were the direct result of violation of their first amendment right, they are entitled to backpay for the period of the suspensions. The court will award them $465.60 each. They also seek and are entitled to money compensation for mental suffering resulting from the suspensions and the harassment that followed suspensions. The court will award them each $5000 for such suffering.

█ Awarding punitive damages is discretionary with the court. The court

---

1. Moreover, if there were some limited disruption it would not necessarily be controlling. In *Porter v. Califano*, 592 F.2d 770 (5th Cir.1979), the appellate court observed:

Before concluding our general discussion of the First Amendment balancing test, one final word is in order. The First Amendment balancing test can hardly be *controlled* by a finding that disruption did occur. An employee who accurately exposes rampant corruption in her office no doubt may disrupt and demoralize much of the office. But it would be absurd to hold that the First Amendment generally authorized corrupt officials to punish subordinates who blow the whistle simply because the speech somewhat disrupted the office. Of course, as *Pickering* indicates, the chilling of even accurate speech may be justified in certain extreme situations, for example, in which the employee unduly breached confidentiality or disrupted intimate working relationships. The point is simply that the balancing test articulated in *Pickering* is truly a balancing test, with office disruption or breached confidences being only weights on the scales.

592 F.2d at 773–74 (emphasis in original). *See also Czurlanis v. Albanese*, 721 F.2d 98 (3rd Cir.1983).

2. The available evidence was not as limited as Hogg claimed. McClain was willing to conduct a full investigation, but the city prevented him from doing so.

declines to award such damages in this case, even though the defendants' conduct may justify imposing such damages.

 As prevailing parties on their first amendment claims, Mustin and Mann are also entitled to reasonable attorney fees. 42 U.S.C.A. § 1988. Upon request, the court will award them attorney fees determined in accordance with the criteria set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). *See also Blum v. Stenson*, — U.S. —, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933 (1983).

### IV.

 The defendants correctly note that they are shielded from liability for damages in their *individual* capacities "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). However, the first amendment right at issue in this lawsuit was clearly established, and a reasonable government employee or official would have known that to punish and harass an employee under the circumstances in this lawsuit would violate the employee's first amendment right. *See Berdin v. Duggan*, 701 F.2d 909, 913 (11th Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 239 (1983). The defendants are therefore liable in their individual capacities.

The defendants are also liable in their *official* capacities, but only for damages resulting from the 10-day suspensions. The suspensions reflected the official policy of the city and, as a result, the defendants are liable in their official capacities for damages flowing from the suspensions. *Owens v. City of Independence, Mo.*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Czurlanis v. Albanese*, 721 F.2d 98, 108 (3rd Cir.1983). Of the $5000 awarded to each plaintiff for mental suffering, the court attributes $2000 to his suspension. As already noted, the wages lost are attributable in full to the 10-day suspensions.

 The harassment which followed the 10-day suspensions was not the official policy of the city, and thus the defendants may not be held liable in their official capacities for damages flowing from this conduct.

 Also, since Hogg did not participate in the harassment that followed the suspensions, he is not liable for damages resulting therefrom. He is liable only for the damages resulting from the suspensions.

### V.

By the opinion and judgment entered today, this court should *not* be understood as concluding, or even implying, that any of the defendants has stolen parts from the City of Montgomery Garage and Shop Department, or that any pilfering has occurred in the department. Instead, this court holds that plaintiffs Mustin and Mann had the constitutional right to report, without penalty, suspected pilfering to the police, as long as in doing so they did not unduly disrupt the ability of the department to deliver its services effectively and efficiently.

An appropriate judgment will be entered.