Raymond C. MOORE Plaintiff,

v.

TRI–CITY HOSPITAL AUTHORITY, et al., Defendants.

No. 1:86–CV–2550–RHH.

United States District Court,
N.D. Georgia,
Atlanta Division.

June 27, 1988.

James L. Ford, Ford & Haley, George M. Weaver, Sibley & Weaver, Atlanta, Ga., for plaintiff.

Victor Alwin Cavanaugh, Swift Currie McGhee & Hires, Atlanta, Ga., for defendants.

### ORDER

ROBERT H. HALL, District Judge.

■ This section 1983 suit arises from plaintiff's termination from employment as Chaplain at South Fulton Hospital. Plaintiff claims damages resulting from alleged violations by defendants of plaintiff's Fourteenth Amendment property right as a term employee to pre-termination notice and a hearing; and plaintiff's First Amendment right not to be fired from his employment in retaliation for his exercise of free speech. The dispute in this case centers on allegations regarding plaintiff's conduct in expressing his displeasure over the handling by the hospital administration of the issue of the continued existence and whereabouts of the chapel and chaplain's office in the hospital's renovation plans. The case is currently before the court on various motions by the parties to supplement the record; plaintiff's motion for partial summary judgment on the issue of whether his speech was of "public concern"; and defendants' motions for summary judgment.[1]

### DISCUSSION

The court GRANTS all the various parties' motions to amend and file documents to supplement the record. The court GRANTS plaintiff's motion for partial summary judgment. *See Sykes v. McDowell,* 786 F.2d 1098, 1103 (11th Cir.1986).[2] Because genuine issues of material fact remain as to each of plaintiff's claims and defendants' affirmative defenses, the court DENIES defendants' motions for summary judgment.

#### A. *Due Process Claim*

■ Defendants argue that plaintiff can show no cognizable property right in his continued employment and therefore cannot demonstrate that he is entitled to trial on his due process claim. Simply stated, plaintiff has created a jury question as to the existence of an employment contract for the fixed term of one year and there-

---

1. The court VACATES its June 20 and June 24, 1988 orders in this case and enters this order in their place.

2. The court finds from the whole record that plaintiff's speech concerning both the religious and spiritual commitment of a public hospital, the availability of a chapel in the facility and the convenience of the chaplain's office to the public who use the hospital facility is unquestionably a matter of "public concern" as that term is construed by the Supreme Court. *See Connick v. Myers,* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 1690–91, 75 L.Ed.2d 708 (1983).

fore has created a jury issue as to whether he held a property right in his continued employment cognizable in a section 1983 action brought under the due process clause of the Fourteenth Amendment. It is plaintiff's ultimate burden to demonstrate the existence of an employment contract which creates such a protected property interest under the Constitution. In *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the court held:

> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Id.* at 577, 92 S.Ct. at 2709. "The sufficiency of a claim of entitlement must be decided by reference to state law." *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). As the Eleventh Circuit has held:

> To determine if plaintiff was entitled to [procedural due process] protections, the Court begins by referring to the state law which contains the terms and conditions of plaintiff's employment. State law defines what is and what is not property. If property interests are created, the Constitution protects these rights by guarantees of due process.

*Blanton v. Griel Memorial Psychiatric Hospital,* 758 F.2d 1540, 1543 (11th Cir. 1985).[3]

First, as evidence of the existence and terms of the employment contract between the Hospital and plaintiff, plaintiff has produced the Hospital's Personnel Policies and Benefits Overview ("Handbook"). Plaintiff contends that Policy No. 4.12 contemplates that the Hospital Authority may contract with employees age 70 and older to continue their employment on an annual basis.

In the language of the policy: "[A]fter attainment of age 70, employees may continue employment by mutual agreement on a year to year basis." Plaintiff contends that he and the Hospital Authority entered into such a "mutual agreement" within the year preceding his termination.

In November 1985, plaintiff requested in writing and was granted a one year "mutual agreement" by the Trustees of the Hospital. Plaintiff has produced his letter to the Chairman of the Personnel Committee (Moore Affidavit, Attachment 1) and has produced testimony that he was orally notified that his request had been approved by the Trustees. Moore Affidavit ¶ 6. In April 1986, plaintiff contends he was directed pursuant to the Handbook to make another request for a "mutual agreement" for the following "fiscal year". Moore Affidavit ¶ 7, Attachment 2. On May, 7 1986, plaintiff made this second request in writing. *Id.*, Attachment 9. Plaintiff contends that during this period of continued employment Under Policy No. 4.12 he was subject to all terms and conditions of the Handbook except those that were inconsistent with the alleged "mutual agreement". Plaintiff points out that he signed two required documents acknowledging receipt of and familiarity with the Handbook. *Id.*, Attachment 10. On May 28, 1986, plaintiff's offer of a mutual agreement of employment was accepted by the Trustees. Moore Dep, Ex. 4.

Second, plaintiff produced evidence that he was consistently assured by the Administrator of the Hospital that under the yearly extension of his employment under Policy No. 4.12 he would be employed for the term of a year. Plaintiff testified that he was told by Frank Conort, Administrator of the Hospital when plaintiff was initially hired and continued in that position until June 30, 1984, that plaintiff was "guaranteed" employment for each year

---

**3.** Even a mutually recognized entitlement may give rise to a property right even though it falls short of a contractual right. as the Eleventh Circuit has held:

> While absence of a contractual right to employment does not preclude the existence of a property interest, plaintiff must show a mutually recognized entitlement, as opposed to a unilateral expectation of a benefit, to establish the existence of a property interest.

*Durham v. Jones,* 698 F.2d 1179, 1181 (11th Cir.1983).

under Policy No. 4.12. Plaintiff testified that David Whitley, Hospital Personnel Director when plaintiff was hired and continued in that position until September 1978, told plaintiff the same thing. *See* Moore Affidavit ¶ 5. According to plaintiff, Conort and Whitley expressly used the word "guaranteed". *Id.* In his deposition, Conort said that he did not recall using the word "guarantee", but did not deny it. Conort Dep. at 15–16. Conort admitted that he told plaintiff that he was "assured" of continued employment during each extension. *Id.* at 7–9, 16. Conort also testified that he understood that plaintiff would be hired for a year at a time and that it was contrary to his understanding that plaintiff could be fired "for no reason whatsoever" just a few weeks after the extension. Conort Dep. at 20–21.

⬛ As the Eleventh Circuit has recognized:

> The right to continued employment may arise where there is a guarantee of employment for a fixed term, *see Lentz v. City Council*, 48 Ga.App. 555, 556, 173 S.E. 406 (1934), or where the employment allows termination only for cause, *Brownlee v. Williams*, 233 Ga. [548] at 551, 212 S.E.2d [359] at 362 [1975] (construing Civil Service Act of Fulton County).

*Ogletree v. Chester*, 682 F.2d 1366, 1369–70 (11th Cir.1982). An employment handbook, even where it constitutes a contract, does not confer more than an "at-will" employment relationship unless it specifies a fixed period of employment. *Burgess v. Decatur Federal Savings & Loan Assoc.*, 178 Ga.App. 787, 788, 345 S.E.2d 45 (1986). Additionally, in *McClure v. Leasco Computer*, 134 Ga.App. 871, 216 S.E.2d 689

(1975), although there was no specific language indicating the time the employment agreement would run, the Court of Appeals reversed the trial court's judgment on the pleadings in favor of the employer holding that the language of the contract and circumstances "tend[ed] to indicate that the parties intended that the plaintiff be hired for a period of at least a year." *Id.* at 873, 216 S.E.2d 689. Here, plaintiff has produced direct testimonial and documentary evidence that there was an agreement for a one-year fixed term of employment.

Defendants argue with some force that the Handbook when read as a whole indicates that Hospital employees serve at the will of the employer. *See e.g., Carmichael v. Tri–City Hospital Authority, et. al.*, No. C83–682A (N.D.Ga., May 2, 1984) (Ward, J.) (holding in regards to this same facility under a somewhat more ambiguous policy handbook that a pre-retirement aged employee had no property right in her employment because the handbook when read as a whole created only employment terminable at will). Plaintiff counters that as applied to the plaintiff in this case, Policy No. 4.12 either "trumps" the other provisions of the Handbook or when read with those other provisions creates at the least an ambiguity not resolvable on motion for summary judgment.[4]

However, even though the court on defendants' motion for summary judgment, reading the language in the light most favorable to plaintiff, could easily find the language of the Handbook ambiguous creating a jury issue as to the term of the contract, plaintiff does not rest on this argument. Plaintiff shows that he requested continued employment pursuant to Policy

---

4. Plaintiff also points out that in *Glenn v. Newman*, 614 F.2d 467, 469 n. 2, 471 (5th Cir.1980) the court held that under Georgia law regulations containing a "list [of] a number of violations that may warrant dismissal .... may fairly be read as creating a reasonable expectation of continued employment absent noncompliance with on the specified reasons." Plaintiff argues that the Manual contains a list of offenses like the ones which in *Glenn* were held to create such an expectation. The list which appears under "Corrective Action Guide" in Policy

No. 4.41 contains 37 items and specifies which of the 37 would warrant dismissal. The introductory paragraph states, "[a] careful review of every case recommended for dismissal will be made by the appropriate department, director, assistant administrator and personnel director before any dismissal notice is given. Such action will only be taken after all reasonable attempts to prevent dismissal have been made." Plaintiff contends that under this language he was reasonable in believing that he was not subject to arbitrary dismissal.

No. 4.12 when directed to do so and that in the minutes of the Trustees Personnel Committee meeting held December 3, 1985, plaintiff's continued employment was approved. Moore Dep., Ex. 26. Plaintiff shows that on April 29, 1986 he was given written notice by Personnel Director Clyde Smith stating:

As stated in the hospital employee handbook, "after attainment of age 70, employees may continue employment by mutual agreement on a year to year basis." With the end of this fiscal year upon us it is necessary for you to submit a written request to me if you desire to continue employment during the next fiscal year.

It is essential that you submit your request for continued employment by Friday May 9, 1986 so I can take them before the Board of Directors for approval.

Moore Affidavit, Attachment 2. The apparent reason for this second request was to put plaintiff's employment on a fiscal year basis. After submitting his request for continued employment, plaintiff was approved at the next meeting of the full Board of Trustees. Moore Dep., Ex. 4. Plaintiff argues that this correspondence created an employment contract by mutual agreement for a fixed term of one year.

Plaintiff's contention is further borne out by the testimony of former Hospital Personnel Administrator Conort who while acknowledging that employees not subject to retirement might not be able to claim a property interest in their employment, believed that as regards the employment policies of the Hospital, an employee over retirement age was in a unique position.[5] Conort also testified that it was his understanding that an employee who received an extension for one year under Policy No. 4.12 could be discharged only for cause during that year. *Id.* at 7–8.

Plaintiff contends that this evidence creates a jury question as to whether the mutual agreement for a fixed term of one year was created. The court agrees.[6] After careful consideration of this evidence and the rules of contractual interpretation, including the "plain meaning" rule, the court finds the plaintiff's understanding to be the far more plausible construction of the Handbook, correspondence, and action taken by the Trustees. The court DENIES defendants' motion for summary judgment on this ground, but declines to enter judgment in plaintiff's favor on this issue because the court feels a contrary construc-

---

5. Conort testified as follows:

Well, when I sit down as the administrator of the hospital and I recommend to a board of trustees that this employee ought to be allowed to extend beyond their retirement, then I think I'm saying to that employee I've recommend that you, the board has approved you for another year of employment.... Now, you are making a special situation. Your saying, "I'm going to let you work another year. You've reached retirement age, but you've got a good work history, you've got a good work record, you're an asset to the hospital, therefore we're going to let you continue for another year." That's different.

Q. And he would have continued employment for another year under the same conditions that other employees were employed at the hospital?

A. Not exactly, no, because I have not said to any other employee you have been approved for a year.

Q. Did you consider him to have special privileges as an employee after he reached retirement age and was approved?

A. At that point, yes, I sure do.

Q. Why would you consider him to have special privileges because he had reached retirement age as opposed to, say, another employee who had worked there for 20 years and hadn't reached retirement age?

A. Because of personnel policy, Mr. Cavanaugh, and it says the administrator recommends and board of trustees approves, you've been approved for an additional year. You haven't said this to any other employee. Conort Dep. at 17–20.

6. Construction of a contract is a question of law unless there are ambiguities in that contract. *Georgia Railroad Bank v. Fed. Deposit Ins.*, 758 F.2d 1548, 1551 (11th Cir.1985). Whether such ambiguities exist is also a question for the court. The court has a duty to resolve such ambiguity by the pertinent rules of construction, and only when such ambiguity remains unresolved after the application of such rules does the ambiguity raise a question of fact for the jury. *See Webster v. Star Distributing Co.*, 241 Ga. 270, 244 S.E.2d 826 (1978); *Runyan v. Economics Laboratory*, 147 Ga.App. 53, 248 S.E.2d 44 (1978); *see also* Ga. Off'l Code Ann. § 13–2–1.

tion is possible.[7]

## B. *Free Speech Claim*

■ As the court has already granted plaintiff's motion for partial summary judgment on the question of whether the speech involved in this case involves a "public concern", the court now proceeds to consider the remaining elements of plaintiff's speech claim. Plaintiff must show evidence that creates a genuine issue of material fact as to whether the speech at issue was a "substantial or motivating factor" in the decision to terminate him. When a plaintiff has met the two-fold burden of demonstrating that the speech is of a "public concern" and thus protected, and that the speech was a "substantial or motivating factor" in the dismissal, the burden shifts to the defendants to show that plaintiff would have been dismissed regardless of his protected speech. *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); and *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). *See also Nicholson v. Gant,* 816 F.2d 591, 599 (11th Cir.1987). Even if the defendants are unable to make this showing, the issue remains whether the adverse employment decision was justified under the circumstances. This question involves a balance between the interest of the employee in his freedom of expression and the interest of the public employer in the efficiency of its operations. If the employee's interest outweighs that of the employer, he may recover. *Connick,* 461 U.S. at 149–50, 103 S.Ct. at 1691–92; *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734. "[T]he state bears a burden of justifying the discharge on legitimate grounds." *Rankin v. McPherson,* —— U.S. ——, 107 S.Ct. 2891, 2898, 97 L.Ed.2d 315 (1987).

Defendants in their brief choose not to press the arguments that plaintiff's speech was not a substantial or motivating factor

in his termination or that the termination would have occurred regardless of the speech. Defendants choose to fight their motion for summary judgment the ground that the *Pickering* balancing analysis tips in their favor. Defendants urge that the court consider three factors mentioned in *Connick* including: (1) whether the nature of the employer's public responsibilities are such that a close working relationship is essential; (2) the manner, time and place of the speech; and (3) the context within which the speech was made. *Connick,* 461 U.S. at 151–54, 103 S.Ct. at 1692–94. In essence, defendants argue that, as a matter of law, plaintiff's speech activities destroyed the possibility of a close working relationship between himself and Administrator Maxwell and created a disruptive influence which impaired the efficiency of the Hospital's operations.

In its most recent statement on the elements of the *Pickering* balance, the Supreme Court said:

> We have previously recognized as pertinent considerations whether the statement impairs discipline by superiors or harmony among coworkers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise.

*Rankin,* 107 S.Ct. at 2899. While defendant produces evidence that administrators considered plaintiff's continued advocacy of the "chapel issue" generally disruptive and that plaintiff considered Administrator Maxwell to be a liar, defendants have not produced any evidence that tends to show that plaintiff's speech disrupted or could potentially have disrupted the functioning of the Hospital's enterprise. Plaintiff denies that he was generally disruptive. Plaintiff has produced evidence of the content of the two speeches made by plaintiff, which when read in a light most favorable

---

**7.** Defendants produced evidence of clauses within the Handbook that, if held applicable to employees whose employment had been extended under Policy No. 4.12, would indicate such an employee was terminable at will. Defendants also produced evidence that it was the Administration's intent that such employees be terminable at will.

to plaintiff, does not threaten the function of the enterprise by challenging his superiors' credibility or by confronting their authority. At worst the speeches question the judgment of the administration on this policy question. A fair interpretation of the speeches' content is that plaintiff pressed for details about the Hospital's plans regarding a chapel.

Defendants contentions on the *Pickering* balance issue may be properly broken down into three sets. First, defendants assert that plaintiff's failure to promote the hospital administration's position on the "chapel issue" had a detrimental impact on a close working relationship between plaintiff and defendant Maxwell. Second, defendants assert that plaintiff's statement in his June 14, 1986 speech that there had been a "failure of communication" between the Administration and the Chaplain's Association impaired discipline by superiors, had a detrimental impact on a close working relationship with Maxwell, and interfered with the regular operation of the Hospital. Third, defendants also assert that plaintiff's pressing for specific commitments regarding plans for the chapel and pastoral care center in the renovated facility was in direct disobedience to Administration orders and was therefore opposed to the hospital's interests.

As to the first point on plaintiff's working relationship with Maxwell, plaintiff produced evidence that other members of the Administration had officially discussed different locations for the chapel prior to the completion of the chapel. Moore Dep., Ex. 6 (Trustees minutes of December 2, 1985 reflect that defendant Morris, Chairman of the Building and Grounds Committee, called upon Mr. Barnett [an assistant administrator] to present some proposed locations for a possible chapel and chaplain's office); Moore Dep., Ex. 16 (Hospital announced that a new chapel would be constructed in the front part of the Hospital on the first floor adjacent to the lobby). Defendants took no umbrage to these remarks. Thus, the question of the location of a chapel was at least arguably an open one prior to the completion of the renovations. The court cannot say as a matter of

law based on the current evidence that plaintiff's advocacy in the two speeches at issue here *ipso facto* destroyed the working relationship between plaintiff and Maxwell. Defendants have offered no other explanation.

As to the allegation that plaintiff's speeches violated Hospital policies or Administration orders, plaintiff has produced evidence that he was invited to the Trustees meeting of December 4, 1985 by defendant Maxwell, as Maxwell had invited all the ministers present at the November 19, 1985 Chaplain's Association meeting to attend the Building and Grounds Committee and Board of Trustees meetings on December 3 and 4, 1985. Moore Dep. held September 18, 1987 at 154–55. By all accounts he was welcome to speak at each event. The court believes a genuine issue of material fact remains on the question of whether plaintiff's conduct violated policies and orders of the Hospital.

As to the alleged statement of plaintiff that there had been a "failure of communication" between the Chaplain's Association and the Administration to which defendant Maxwell evidently took great offense, plaintiff has produced evidence of the context of his remarks that such a "failure of communication," contrary to defendants' contention that plaintiff thereby misrepresented that no statements were made to the chaplains concerning the chapel, was actually a failure of the respective parties to *listen* to those statements that were made. In this light, plaintiff's mention of a failure of communication would not constitute insubordination or recrimination against the Administration. It seems abundantly clear that the appropriate determination of what characterization such a remark should receive should be by the trier of fact.

Defendants contend that plaintiff failed to discharge his duty of advocating Mr. Maxwell's position to the other minister members of the hospital Chaplain's Association. However, plaintiff produced evidence to the contrary that he had publicly supported an orderly, respectful resolution to the issue attempting to minimize the

controversy. On October 21, 1985, plaintiff asked Rev. Ray Godleski to restrain the Fairburn Baptist Association from making a public issue of the chapel and pastoral care center. Moore Affidavit ¶ 20. On June 12, 1986, plaintiff told Rev. Steve Jett that the pastors should not fight against the Hospital on the chapel and pastoral care center. *Id.* Plaintiff also discouraged Rev. Waters from sending a letter to Maxwell about the chapel issue which could have been perceived as inflammatory. Waters Dep. at 76–79, Ex. 11. Plaintiff in his November 5, 1985 letter to the members of the Chaplain's Association indicates his advocacy of a constructive approach to solving the chapel issue. Moore Affidavit, Attachment 5. His continued general support for the institution is indicated by a January 27, 1986 letter to the Chaplain's Association. Moore Affidavit, Attachment 6. The court cannot say as a matter of law even from the content of the two speeches that they constituted insubordination such that the *Pickering* balance tips in defendants' favor.

Absent a stronger showing by defendants that plaintiff's speech caused actual or potential disruptive effect, the court cannot say that the defendants have adequately demonstrated that the *Pickering* balance entitles them to summary judgment on plaintiff's speech claim. The court DENIES defendants' motion on this ground.

## C. *Qualified Immunity*

Defendants argue that to the extent they are sued in their individual capacities, they are entitled to qualified immunity. The court disagrees. The Supreme Court has created the qualified immunity doctrine to protect government officials who are sued in their individual capacity from harassing lawsuits. In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the court held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. The qualified immunity doctrine, as enunciated in *Harlow,* was designed to "avoid 'subject[ing] government officials either to the costs of trial or to the burdens of broad-reaching discovery' in cases where the legal norms the officials are alleged to have violated were not clearly established at the time." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (quoting *Harlow,* 457 U.S. at 817–18, 102 S.Ct. at 2738.

The Court has concluded that qualified immunity as a defense is actually an entitlement not to stand trial under certain circumstances. *Id.* 472 U.S. at 525, 105 S.Ct. at 2815. Where the allegations of the complaint or the undisputed facts after discovery fail to show that an official violated "clearly established" laws, the official is entitled either to have the complaint dismissed or his motion for summary judgment granted. The Supreme Court recently clarified its position in this regard stating that,

the right the official is alleged to have violated must have been 'clearly established' in a ... particularized, and hence ... relevant sense: the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.... [I]n the light of preexisting law the unlawfulness must be apparent.

*Anderson v. Creighton,* — U.S. —, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Thus, in *Anderson* the Court defined the "relevant question" as "the objective (albeit fact-specific) question of whether a reasonable" state official could have believed the actions taken were lawful, in light of clearly established law and the information the official possessed. *Id.* 107 S.Ct. at 3040.[8]

[8]. The parties assume the applicability of *Anderson* outside the Fourth Amendment context of that case. The court here accepts that assumption without deciding the question. *Cf*

*Rich v. Dollar,* 841 F.2d 1558, 1565 (11th Cir. 1988) (holding that *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) does not generally abrogate the normal qualified im-

Read out of context, the language of *Harlow, Mitchell* and *Anderson* might lead one to a similar conclusion as that of the defendants in this case. Even though the Court, consistent with its goal that government officials not be needlessly burdened by the litigation process, has "emphasized that qualified immunity questions should be resolved at the earliest possible stage of litigation," *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738, it has not suggested that the procedural rules applicable to a motion for summary judgment should be abrogated. *See Anderson,* 107 S.Ct. at 3042 n. 6.

There is no dispute that the law controlling both plaintiff's due process and free speech claims were clearly established at the time of the alleged violation of his rights. Defendants do not argue that the basic due process and free speech rights which plaintiff asserts were not clearly established when plaintiff was terminated, but rather that the application of those rights to these facts was not clearly established so that a reasonable official in their position could have believed their actions were lawful. The court disagrees.

■ As to plaintiff's due process claim, the court has held that, when read in light of the relevant evidence, the Hospital Handbook is ambiguous enough as to whether plaintiff's was a fixed term contract for one year to remain a question for the jury. However, the court has also noted that plaintiff's is the far more plausible reading, especially in light of the plain meaning of Policy No. 4.12. Plaintiff produced uncontroverted evidence that the Hospital had extended his employment for the term of one year. Additionally, the testimony of former Administrator Conort indicates that plaintiff's was the commonly understood construction of that term. *See*

Order *supra* at A.; Conort Dep. at 7–8, 17–18. The remaining dispute raised by defendants is whether the other policies contained in the Handbook altered the plain meaning of Policy No. 4.12 and whether the testimony of defendants' intent in extending plaintiff's employment demonstrates that plaintiff could be terminated at will regardless of the fixed term of his contract. The court agrees with the parties that the basic due process requirements for one holding fixed term employment were clearly established. *See* Order *supra* at A. But the court, under all the circumstances of this case on the present record cannot say that in light of this clearly established and the information the defendants in this case possessed, a reasonable state official could have believed that actions taken were lawful.[9]

■ The facts surrounding the formation of the alleged contract are hotly in dispute here. Through the testimony of the former administrator, plaintiff has also placed into issue the administration's understanding of the effect of Policy No. 4.12. What the Administration defendants and Trustees understood and intended in extending plaintiff's employment another year is very much in dispute as well. Under these circumstances, a finding of qualified immunity at this stage of the proceedings would require acceptance of defendants' version of the facts as true. As this Circuit has recognized that qualified immunity is an affirmative defense that defendants must plead and prove, *Berdin v. Duggan,* 701 F.2d 909, 913 (11th Cir.1983), on defendants' motion for summary judgment this court may not grant defendants such a presumption. The court DENIES defendants' motion on this ground.[10]

---

munity standard articulated in *Harlow* and *Mitchell* absent some further showing.)

**9.** The issue of a "term" contract was not before the court in *Carmichael v. Tri–City Hospital Authority, et al.,* No. C83–682A (N.D.Ga., May 2, 1984) (Ward, J.) and defendants could not have reasonably relied on that case in this situation.

**10.** The court feels that substantial factual development and credibility determinations at trial

will be necessary if defendant is to prevail on this defense. The court does not find on the facts in the record before the court that, as a matter of law, a genuine issue of material fact reflected in this record precludes this court from granting summary judgment. *See Rich v. Dollar,* 841 F.2d 1558, 1561 n. 1 (11th Cir.1988); *Riley v. Wainwright,* 810 F.2d 1006 (11th Cir. 1987). In *Riley,* 810 F.2d at 1007 the Eleventh Circuit held that where a district court's denial of a claim of qualified immunity turned on an

As to plaintiff's speech claim, defendants argue that due to the fact that this court applied the *Pickering* balancing test involved in the relevant First Amendment analysis, qualified immunity is automatically appropriate. The Seventh Circuit in *Benson v. Allphin*, 786 F.2d 268, 276, 276 n. 18 (7th Cir.1986) held that qualified immunity should be extended in almost every case in which the existence of a right depends on a balancing test unless prior case law addresses the specific facts at issue. The Eleventh Circuit has not been so generous in applying the defense of qualified immunity in employer-employee disputes. In *Berdin v. Duggan*, 701 F.2d 909, 913 (11th Cir.1983), in which a maintenance worker was fired after making critical comments to the mayor, the defense of qualified immunity was rejected because "[t]he disciplining of a public employee, for exercising his first amendment right to speak, clearly contravenes established law." *Id.* at 913. In that case, at a bench trial was no evidence was presented that the employee's speech had resulted in any disruption. *See also Bennis v. Gable*, 823 F.2d 723, 733 (3d Cir.1987) (qualified immunity defense rejected in patronage dismissal of a policeman because "as of 1982 the law was 'clearly established' that a public employee could not be demoted in retaliation for exercising his rights under the first amendment"); *Lewis v. Harrison School District*, 805 F.2d 310, 318 (8th Cir.1986) (reversing district court's grant of qualified immunity as a matter of law to defendants who had fired plaintiff school teacher for speech critical of school officials, finding

that defendants' action violated clearly established law).[11]

Plaintiff, in his speech claim, contends that his firing by defendants "was based on a naked desire to punish [him] for expressing a certain point of view." *Egger v. Phillips*, 710 F.2d 292, 320 (7th Cir.1983). As the court has previously found in denying defendants' motion for summary judgment on this claim, plaintiff has produced ample evidence to establish this claim. Plaintiff argues that defendants have asserted that plaintiff had a disruptive effect only as a pretext to conceal their intent to punish plaintiff for his speech about the "chapel issue". Qualified immunity is an affirmative defense that must be asserted by the defendant. *Berdin*, 701 F.2d at 913 n. 13. Plaintiff has produced evidence that, if believed by the trier of fact, would defeat qualified immunity. Plaintiff has produced direct and circumstantial evidence that his remarks caused no disruption and in the function of the hospital or his professional relationship with defendant Maxwell. Defendants' assertion of qualified immunity would require acceptance of their version of these disputed facts. Defendants are not entitled to this presumption on summary judgment.[12] Thus, the court finds that defendants' entitlement to qualified immunity must await a final determination of the consequences of plaintiff's speech as a matter of fact and DENIES defendants' motions for summary judgment on this ground.

CONCLUSION

In sum, the court GRANTS all the parties' motions to amend and file documents

---

issue of law, it was immediately appealable. (citing *Mitchell v. Forsyth*, 472 U.S. at 530, 105 S.Ct. at 2817). But where the district court denies a defendant's claim because the case required substantial factual development, the court's order is not a final appealable decision. *Id.*

Likewise, the Circuit in *Riley* found that the Supreme Court in *Mitchell v. Forsyth* specifically noted that it was expressing no opinion regarding the appealability of a denial of qualified immunity when the plaintiff's action involves claims for injunctive relief that will have to be adjudicated regardless of the resolution of any damage claims. *Riley*, 810 F.2d at 1007 (citing *Mitchell v. Forsyth*, 472 U.S. at 519 n. 5, 105 S.Ct.

at 2812 n. 5). The Circuit held that where a plaintiff requested injunctive relief as well as damages, the case is not controlled by *Mitchell v. Forsyth* and is not immediately appealable. *Riley*, 810 F.2d at 1007. In the instant case, plaintiff in his Complaint has requested injunctive relief that will have to be adjudicated regardless of the resolution of any damage claims.

**11.** The court declines to follow *Benson v. Allphin*, 786 F.2d 268 (7th Cir.1986).

**12.** The court agrees with plaintiff's position that the mere fact that defendants consulted an attorney cannot insulate them from liability through qualified immunity.

to supplement the record; GRANTS plaintiff's motion for partial summary judgment; and DENIES defendants' motions for summary judgment in all respects.

The following issues remain for trial:

A. *Due Process Claim*

(1) Whether plaintiff and his employer entered into an employment contract, which was in force at the time of plaintiff's termination, for the term of one year as Chaplain of South Fulton Hospital, giving plaintiff a constitutionally protected property right in his employment cognizable in a section 1983 suit. It is undisputed that plaintiff did not receive pre-termination notice and a hearing.

B. *Free Speech Claim*

(2) Whether plaintiff's speech was "a substantial or motivating factor" in his termination?

(3) Whether the defendants can show by a preponderance of the evidence that plaintiff would have been dismissed regardless of his protected speech?

(4) Whether plaintiff's termination was justified under all of the circumstances of the case?

(5) Whether defendant Bott conspired with the other defendants to deprive plaintiff of his constitutional rights as claimed in the plaintiff's pleadings? [13]

C. *Qualified Immunity*

(6) Whether defendants are entitled to qualified immunity in their individual capacities on either of plaintiff's claims?

The court, assuming defendants are found liable under the appropriate standard for awarding punitive damages, is unable on the current record to resolve the question of whether plaintiff may recover punitive damages from defendants in their official capacities. This issue hinges on the applicability of *City of Newport V. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). *See also Bar-*

*nett v. Housing Authority of Atlanta*, 707 F.2d 1571 (11th Cir.1983). The court, in order to resolve this issue, intends to hold a short hearing, at which time the parties may present evidence if the parties believe it necessary, immediately prior to trial in order to determine the monetary source of any punitive damage award and the applicability of the above-mentioned cases.

---

13. The court finds that plaintiff has produced sufficient evidence to create a genuine issue of material fact as to defendant Bott's part in the alleged conspiracy to deprive plaintiff of his constitutional rights.